United States District Court
DS-SDTX
FILED

NOV 09 2026 3A

Nathan Ochsner, Clerk
Laredo Division

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 5:20-cr-01545 |
| | § | |
| SAIFUL ISLAM | § | |
| AKA Saiful Feni | § | |
| AKA Sony | § | |
| AKA Sunni | § | |
| AKA Jahange | § | |
| | § | |
| Defendant. | § | |

# PLEA AGREEMENT

The United States of America, by and through AARON F. REITZ, United States Attorney for the Southern District of Texas, Leslie Cortez, Assistant United States Attorney for the Southern District of Texas, A. TYSEN DUVA, Assistant Attorney General for the U.S. Department of Justice's Criminal Division, Spencer M. Perry, Trial Attorney for the Human Rights and Special Prosecutions Section of the U.S. Department of Justice's Criminal Division, the defendant, SAIFUL ISLAM ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

## Defendant's Agreement

1. Defendant agrees to plead guilty to Counts ONE, TWO, and THREE, of the indictment and to persist with that plea of guilty through sentencing. Count ONE charges Defendant with Conspiracy to Bring an Alien to the United States for the Purpose of Commercial Advantage and Private Financial Gain, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(i), 1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i). Counts TWO and THREE charge

Defendant with Bringing an Alien to the United States for the Purpose of Commercial Advantage and Private Financial Gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii) and Title 18, United States Code, Section 2. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the indictment, or proved to a jury or proven beyond a reasonable doubt. Defendant understands that, if the Court accepts this plea agreement, the Court will include the include the parties' sentencing recommendation made under Rule 11(c)(1)(C) B LAC AAF in the Court's judgment.

**Punishment Range**

2. The statutory maximum penalty for a violation of Conspiracy to Bring an Alien to the United States for the Purpose of Commercial Advantage and Private Financial Gain is imprisonment not more than ten years and a fine of not more than $250,000. *See* Title 8, United States Code, Sections 1324(a)(1)(B)(i). The statutory minimum penalty for the first and second violations of Bringing an Alien to the United States for the Purpose of Commercial Advantage and Private Financial Gain is imprisonment not less than three years, respectively. *See* Title 8, United States Code, Sections 1324(a)(2)(B)(ii). The statutory maximum penalty for the first and second violations of Bringing an Alien to the United States for the Purpose of Commercial Advantage and Private Financial Gain is imprisonment not more than ten years and a fine of not more than $250,000, respectively. *See* Title 8, United States Code, Sections 1324(a)(1)(B)(i). Additionally, Defendant may receive a term of supervised release after imprisonment of not more than three years. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for not more than two years, without credit for time already served on the term of supervised release prior

to such violation. *See* Title 18, United States Code, Sections 3559(a)(3) and 3583(e)(3). Defendant understands that the sentences on multiple counts may be imposed to run consecutively to one another or to any other sentence. Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

**Mandatory Special Assessment**

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. In addition to the special assessment imposed under Section 3013, unless the Court finds Defendant to be indigent, Defendant shall pay an additional assessment of $5,000 pursuant to Title 18, United States Code, Section 3014(a)(5). The special assessment imposed under Section 3014 is payable only after Defendant has satisfied all outstanding court-ordered fines, orders of restitution, and any other obligation related to victim-compensation arising from the criminal convictions on which this assessment is based. Title 18, United States Code, Section 3014(b). Payments will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

**Immigration Consequences**

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney

has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Waiver of Appeal, Collateral Review, and Statute of Limitations**

5. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

6. Defendant also agrees that, should the conviction following the Defendant's plea of guilty pursuant to this Agreement be vacated for any reason, then any prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement (including any counts that the United States has agreed to dismiss at sentencing pursuant to this Agreement) may be commenced or reinstated against the Defendant, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement or reinstatement of such prosecution. It is the intent of this Agreement to waive

all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this Agreement is signed.

7. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States or the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

8. Defendant understands and agrees that each and all waivers contained in the Agreement are made in exchange for the concessions made by the United States in this plea agreement.

**The United States' Agreements**

9. The United States agrees to each of the following:

(a) If (i) Defendant pleads guilty to Counts 1, 2, and 3, of the indictment, (ii) Defendant persists in that plea through sentencing, and (iii) the Court accepts this plea agreement, the United States will move to dismiss any remaining counts of the indictment at the time of sentencing. Defendant agrees that, with respect to any and all dismissed charges, he is not a "prevailing party within the meaning of the 'Hyde Amendment,' Section 617, P.L. 105-119 (Nov. 26, 1997)," and will not file any claim under that law;

(b) If (i) through the time of sentencing, the United Sates is convinced

that Defendant has demonstrated "acceptance of responsibility" for the offense to which Defndant is pleading guilty and all relevant conduct, as defined in U.S.S.G. § 1B1.3 and (ii) the United States does not determine that Defendant, after signing this agreement, committed any other federal, state, or local crimes, or engaged in conduct that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1, Defendant clearly demonstrates acceptance of responsibility for his offenses, resulting in a 2-level decrease to the offense level, pursuant to U.S.S.G. § 3E1.1(a).

(c) If the Court determines that Defendant qualifies for an adjustment under U.S.S.G. § 3E1.1(a), and the offense level prior to operation of § 3E1.1(a) is 16 or greater, the United States will move under § 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

**The Parties' Agreements**

10. The parties agree to several sentencing stipulations, listed below. These stipulations are not exhaustive; the parties reserve the right to argue other adjustments to the offense level at sentencing. The stipulations include:

(a) Defendant's criminal history is categorized as Category I, pursuant to U.S.S.G. § 4A1.1.

(b) The base offense level for the is 12, pursuant to U.S.S.G. § 2L1.1(a)(3).

(c) The parties agree that the offense involved smuggling of between 6 and 24 aliens, resulting in a 3-level increase to the offense level, pursuant to U.S.S.G. § 2L1.1(b)(2)(B).

(d) The offenses involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, resulting in a 2-level increase to the offense level, and a minimum post-operation offense level of 18, pursuant to U.S.S.G. § 2L1.1(b)(6).

(e) Defendant was an organizer, leader, manager, or supervisor in a criminal activity other than described in U.S.S.G. § 3B1.1(a) or U.S.S.G. § 3B1.1(b), resulting in a 2-level increase to the offense

level, pursuant to U.S.S.G. § 3B1.1(c).

(f) Counts 1, 2, and 3 constitute one group of closely related counts, pursuant to U.S.S.G. §§ 3D1.2(a) or 3D1.2(b), with a combined offense level of 20, pursuant to U.S.S.G. §§ 3D1.3(a) and 3D1.4.

(g) To the extent that the Defendant served a term of official detention in Brazil as a result of conviction(s) for Conspiracy to Bring an Alien to the United States; Bringing an alien, MB, to the United States; or Bringing an Alien, AK, to the United States, Defendant's sentence shall be credited for that term of official detention, pursuant to Title 18, United States Code, Section 3585.[1]

(h) If the Court accepts this plea agreement and if conditions of the United States' agreements are met, the United States Sentencing Guidelines recommend a sentence range of 33 to 41 corresponding with a combined offense level of 20 and a Category I criminal history.

**Agreement Binding the Office of the U.S. Attorney for the Southern District of Texas and the U.S. Department of Justice Criminal Division's Human Rights and Special Prosecutions Section Only**

11. The United States Attorney's Office for the Southern District of Texas and the U.S. Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section agree that they will not further criminally prosecute Defendant for the specific conduct described in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the U.S. Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section, and Defendant. It does not bind any other United States Attorney's Office, component within the U.S. Department of Justice, foreign government, or state government. The United States Attorney's Office for the Southern District of Texas and the U.S. Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section will bring this plea

---

[1] The parties have not determined the charges for which Defendant was convicted in Brazil and the parties have not determined whether Defendant served a term of official detention pursuant to that conviction.

agreement and the full extent of Defendant's acceptance of responsibility to the attention of other prosecutors, if requested.

**United States' Non-Waiver of Appeal**

12. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring the facts of this case, including evidence in the files of the United States Attorney's Office for the Southern District of Texas, the files of the U.S. Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section, or the files of any investigative agency, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

**Sentence Determination**

13. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties'

positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

**Rights at Trial**

14. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

**Factual Basis for Guilty Plea and Sentencing Stipulations**

15. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts 1, 2 and 3 of the indictment. If this case were to proceed to trial, the United States could

prove each element of the offense beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

(a) Defendant is a citizen of Bangladesh and is not a United States citizen.

(b) In or about and between June 2017 and October 2019, in the Southern District of Texas and elsewhere, Defendant, for the purpose of commercial advantage and private financial gain, did knowingly and intentionally combine, conspire, confederate, and agree with others to bring and attempt to bring individuals to the United States. Defendant and others that combined, conspired, confederated and agreed others to bring and attempt to bring individuals to the United States were members of an alien smuggling organization. Defendant was a manager and supervisor of that alien smuggling organization from approximately June 2017 until October 2019. The alien smuggling organization involved five or more participants.

(c) The individuals brought by the alien smuggling organization to the United States crossed the United States-Mexico border into the United States by wading across the Rio Grande River and/or jumping the border fence.

(d) The individuals brought by the alien smuggling organization were not United States citizens and did not have prior official authorization from the United States government to come to, enter, and reside in the United States. At or around the time the Defendant participated in the alien smuggling organization, Defendant knew that the individuals brought by the alien smuggling organization were not United States citizens and did not have prior official authorization from the United States government to come to, enter, and reside in the United States.

(e) The individuals brought by the alien smuggling organization to the United States paid Defendant and other members of the alien smuggling organization to facilitate their travel from Sao Paulo, Brazil, and other locations, through locations in South America, Central America, and Mexico, and to the United States-Mexico border so that the aliens could illegally enter the United States. Defendant and other members of the alien smuggling organization arranged to be paid and were paid in Mexico, Central America, South America, Bangladesh, and elsewhere.

(f) The alien smuggling organization brought at least six to twenty-four

aliens to the United States.

(g) Defendant and others known and unknown, aiding and abetting each other, did knowingly bring aliens whose initials are "MB" and "AK" to the United States. MB and AK entered the United States on or about May 7, 2018, outside a designated port of entry within the Southern District of Texas near Laredo, Texas.

(h) Before, during, and at the conclusion of MB and AK's journeys, Defendant knew that MB and AK were aliens who had not received prior official authorization to come to, enter, and reside in the United States, regardless of any official action which may later have been taken with respect to MB or AK.

(i) Defendant coordinated MB and AK's journeys beginning in or around Defendant's restaurant in Sao Paulo, Brazil, through Peru, Ecuador, Colombia, Panama, Costa Rica, Nicaragua, Honduras, Guatemala, and Mexico, and to the United States. Defendant took photos of MB and AK in Brazil and used those photos to coordinate MB and AK's journeys with other members of the alien smuggling organization. Defendant communicated with MB and AK throughout MB and AK's journeys. MB and AK traveled by foot, personal vehicle, taxi, tuk-tuk, bus, horseback, boat, and plane. MB and AK slept in hotels, stash houses, and a chicken coop.

(j) Members of the alien smuggling organization directed MB and AK to use others' immigration documents as their own to enter Honduras.

(k) Defendant and other members of the alien smuggling organization brought MB and AK to the United States for the purpose of commercial advantage and private financial gain. MB and AK each paid Defendant $6,000 to bring them to the United States.

(l) MB and AK's journey posed substantial risks of serious bodily injury to MB and AK. Defendant intentionally or recklessly created these substantial risks of serious bodily injury to MB and AK. In Colombia, MB and AK rode a boat that lacked basic safety features and was piloted by intoxicated pilots. In Panama, MB and AK trekked across the Darien Gap on foot, during which time AK heard nearby gunfire.

(m) Brazilian authorities convicted Defendant for charges related to smuggling aliens from Brazil to the United States. Brazilian authorities sentenced the Defendant to a penalty that may have include a term of official detention. Defendant completed his

sentence in Brazil.

**Breach of Plea Agreement**

16. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, including required financial information, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

**Monetary Penalties, Assets and Financial Disclosures**

17. Defendant understands and agrees that monetary penalties will be subject to immediate enforcement as provided in 18 U.S.C. § 3613 and that monetary penalties will be submitted to the Treasury Offset Program so that payments to the Defendant may be applied to federal debts.

18. Defendant understands that restitution, forfeiture, and fines are separate components of sentencing and are separate obligations. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge in any manner, including by direct appeal or in a collateral proceeding, any restitution order, any forfeiture orders, and any fines.

**Forfeiture**

19. As part of this plea agreement, Defendant agrees to the following:

(a) to forfeit, via either an administrative or judicial proceeding, all assets listed in the charging document (including any Supplemental Notice of Forfeiture), and to forfeit or abandon any assets seized during this investigation or a related investigation;

(b) to withdraw any claims and petitions for such listed or seized assets, whether in this proceeding or another proceeding, and to waive notice of administrative proceedings (including forfeiture, destruction, and abandonment for seized property);

(c) that Defendant obtained at least $12,000 from the criminal offenses, that the factual basis for the guilty plea supports the imposition of a money judgment in that amount, and that the Defendant agrees to the imposition of a money judgment in that amount [or, if not agreed, that the Court will determine the proper amount of a money judgment];

(d) that one or more of the conditions set forth in 21 U.S.C. § 853(p) exists, so that the forfeiture money judgment may be immediately satisfied via forfeiture of substitute property; and

(e) to the order of forfeiture becoming final as to Defendant immediately following this guilty plea or immediately following entry of the forfeiture order, whichever applies.

**Financial Statement**

20. Defendant agrees to truthfully complete under penalty of perjury, within thirty days of the execution of this Plea Agreement, a financial statement on a form provided by the United States Attorney's Office and to update the statement within seven days of any material change. Defendant also agrees to make full disclosure to the United States Probation Office of all current and anticipated assets in which Defendant has an interest both before sentencing and again before termination of supervised release or probation, with such disclosures to be shared with the United States Attorney's Office.

21. Defendant further agrees not to dispose or transfer any assets without the prior written permission of the United States and to authorize the release of all financial information

requested by the United States, including, but not limited to, credit histories and tax returns. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's financial disclosure, including in a deposition or informal debtor exam, whether before or after sentencing.

**Complete Agreement**

22. This written plea agreement, consisting of 15 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. Other than any written proffer agreement(s) that may have been entered into between the United States and Defendant, this agreement supersedes any prior understandings, promises, agreements, or conditions between the United States and Defendant. No additional understandings, promises, agreements, or conditions have been entered into other than those set forth in this agreement, and none will be entered into unless in writing and signed by all parties. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

23. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Laredo, Texas, on Nov. 9, 2026.

Saiful Islam

SAIFUL ISLAM
Defendant

Subscribed and sworn to before me on November 9, 2026.

NATHAN KYLE OCHSNER
UNITED STATES DISTRICT CLERK

By: ______________________________
Deputy United States District Clerk

APPROVED:

AARON F. REITZ
United States Attorney

By: ______________________________
Leslie Cortez
Assistant United States Attorney
Southern District of Texas

A. TYSEN DUVA
Assistant Attorney General, Criminal Division

/s/ Spencer M. Perry
Spencer M. Perry
Trial Attorney
Human Rights & Special Prosecutions Section

______________________________
Adriana Arce Flores, Attorney for Defendant